# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FAMILY LIFE CHURCH, an Illinois Religious Corporation; and Frank Cherrye, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 07 CV 0217 |
| CITY OF ELGIN, an Illinois Municipal Corporation | ) ) ) | Judge Marvin E. Aspen |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Cherrye moves for Summary Judgment with respect to Count X of his and Family Life Church's Amended Complaint against the City of Elgin. For the reasons stated below, we deny this motion.

**I.  BACKGROUND**

Although we have outlined most of the general relevant facts of this case in our Order on Elgin's Motion to Dismiss, we include some additional discussion of particular relevance to Count X here. Cherrye lived in Family Life's and HELPS's homeless shelter before Family Life closed its shelter in October 2006 (Am. Compl. at ¶ 17) After the October 20, 2006 closure, Cherrye left the facility. (*Id.*) Cherrye stayed at another facility, operated by Public Action to Deliver Shelter (PADS), a non-religious entity that ran its shelter – in accordance with an agreement with Elgin – only during the winter months. (*Id.* at 19-20.) Another restriction in place at PADS provided that Cherrye could only stay at their facility for three days, the maximum length of time Elgin allows unless an individual can prove a "connection to the City of Elgin." (*Id.* at 17.)

According to Cherrye, after leaving PADS, he went "into the woods" for about a week, and then lived on a HELPS shelter bus. (*Id.*) Cherrye alleges that living on the bus was difficult because "they had to stay ahead of the police," as apparently the bus could only be parked in lots for an hour before the Elgin police would make the bus move. (*Id.*) A Christian camp located approximately twenty minutes outside of Elgin heard about the situation and let the bus stay parked on their grounds at night. (*Id.*)

Previously, during his time living at the Family Life facility, Cherrye had been employed by PA staffing in Elgin, which required him to start work at 5:30 a.m. (*Id.* at 18.) The bus at the Christian camp did not bring Cherrye back to Elgin each day until 7:00 a.m., which caused him to lose his job at PA Staffing. (*Id.*) Cherrye alleges that he had access to medical care in Elgin through the Veteran's Administration, and access to food in Elgin through soup kitchens and food pantries. (*Id.*) Cherrye also had access to The Wayside Center, which provided a Bible study, a place to shower and to receive mail. (*Id.* at 18.) Cherrye further alleges that he lost reasonable access to these benefits as a result of Elgin's "connection to the City of Elgin" requirement and the closing of HELPS. (*Id.*)

In Count X of the Amended Complaint, Cherrye claims that the City of Elgin's "connection to the City of Elgin" requirement violates his right to travel. (Am. Compl. ¶¶ 99-104.) Cherrye asserts that the three-day limit imposed on those who cannot prove a connection to the City of Elgin serves as a ban on the travel and migration of homeless citizens to Elgin. (*Id*. at ¶ 102.)

## II. ANALYSIS

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. A genuine

issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Cherrye is entitled to judgment as a matter of law. While the Supreme Court has long recognized a fundamental right to *interstate* travel in regards to residency restrictions, *McCarthy v. Philadelphia Service Commission*, 424 U.S. 645 (1976); *Dunn v. Blumstein*, 405 U.S. 330 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 636 (1969), Cherrye's Count X rests on an assertion of a right to *intrastate* travel. Even so, we do not need to determine whether a Constitutional right to intrastate travel exists, as Cherrye's motion fails even if the traditional interstate travel analysis were to apply.

The Supreme Court's interstate travel decisions hinge on the distinction between durational and bona fide residency requirements. (*Id.*) "All residency restrictions have an effect on the right to interstate travel, but only those residency restrictions which can be characterized as 'durational' have been found to unconstitutionally impinge or penalize the right to travel, in the absence of some compelling state interest." *Andre v. Board of Trustees of Village of Maywood*, 561 F.2d 48, 52 (7th Cir. 1977). A durational residence requirement conditions the receipt of a public benefit on the length of time that an individual has resided within the relevant community. *Andre*, 561 F.2d at 52. "Where eligibility for government benefits such as welfare, *Shapiro v. Thompson*, 394 U.S. 618 (1969), or medical care, *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), or where the exercise of other fundamental rights such as voting,

*Dunn v. Blumstein*, 405 U.S. 330 (1972), are conditioned upon the fulfillment of a durational residency requirement, the classification impermissibly penalizes the fundamental right to travel interstate in violation of the equal protection clause, unless a compelling state interest is shown." *Andre*, 561 F.2d at 52.

A bona fide residency requirement, however, only conditions the receipt of a public benefit on proof that the individual does, in fact, reside within the relevant community. *Fayerweather v. Town of Narragansett Housing Authority*, 848 F.Supp. 19, 21 (D.R.I. 1994). Bona fide residency requirements have not been found to violate a fundamental right to travel or discriminate against any suspect class, and are therefore only subject to rational basis review. *Martinez v. Bynum*, 461 U.S. 321 (1983); *Andre*, 561 F.2d at 52. A bona fide residency requirement does not burden or penalize the constitutional right of travel because any person is free to move to a locality and establish residency there. "A bona fide residence requirement simply requires that the person *does* establish residence before demanding the services that are restricted to residents." *Martinez*, 461 U.S. at 328-329 (emphasis in original).

The Elgin "connection requirement" allows a homeless individual to demonstrate residence by showing any one of the following: (a) the individual has or had a mailing address in the City within the last two years; (b) the individual has established employment in the City; (c) the individual has immediate family living at a mailing address in the City; or (d) the individual is attending or had children attending school in the City. (Def's Statement of Facts, ¶ F.)

Elgin's connection requirement has no durational element: it does not require that a homeless individual establish that he or she has lived in the City for a certain length of time. *Andre*, 561 F.2d at 52. Any homeless individual may, without delay, move to Elgin and establish a connection by meeting any one of the four factors of the "connection requirement."

*Martinez*, 461 U.S. at 328-329. Therefore, we find that the "connection requirement" is a bona fide residence requirement and is only subject to rational basis review. *Fayerweather*, 848 F.Supp. at 21.

Pursuant to the Service Agreement, the City provides PADS $30,400 in funding. (Pl's Mem. in Supp. of SJ at 4). The City claims that the "connection requirement" seeks to distribute these limited funds to those that have the necessary connection to the City of Elgin. (Def's Opp. Br. at 10). We cannot conclude as a matter of law that this requirement is not rationally related to the legitimate government interest of preserving scarce public shelter resources to locals. *Fayerweather*, 848 F.Supp. at 21. Accordingly, we deny Cherrye's motion for partial summary judgment on Count X.[1]

It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: September 24, 2007

---

[1] We also find that Cherrye's supporting Local Rule 56.1 Statement of Facts suffers from the same defects as does Family Life Church's. Those defects provide an independent ground for denial of this motion.