# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FAMILY LIFE CHURCH, an Illinois Religious Corporation; and FRANK CHERRYE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 07 CV 0217 ) |
| CITY OF ELGIN, an Illinois Municipal Corporation, | ) ) ) Judge Marvin E. Aspen ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant City of Elgin moves to dismiss plaintiffs Family Life Church's and Frank Cherrye's Amended Complaint. The ten counts in the Amended Complaint set forth the following allegations: a) Counts I and II allege violations of the First Amendment's Free Exercise and Free Speech clauses, respectively; b) Count III alleges a violation of the Fourteenth Amendment's Equal Protection Clause; c) Counts IV-VI allege violations of the federal Religious Land Use and Institutional Persons Act, 42 U.S.C. § 2000cc, et al. (RLUIPA); d) Counts VII, VIII, IX, XI, and XII allege violations of Illinois state and municipal law, namely the Illinois Religious Freedom Restoration Act, (IRFRA) the Illinois Open Meetings Act (IOMA), the Elgin Zoning Ordinance (EZO), and the common-law tort of Intentional and Negligent Infliction of Emotional Distress.

Elgin contends that: a) plaintiffs lack standing to bring their federal claims; b) some federal claims are not ripe and others are moot; and, alternatively, c) plaintiffs fail to state a claim under RLUIPA. Elgin further contends that with respect to the state and municipal claims: a) we lack supplemental jurisdiction over these claims if we dismiss the federal claims; b) the zoning law claims are moot; and/or c) these claims fail on the merits.

For the reasons stated below, we grant in part and deny in part Elgin's motion.

I.  BACKGROUND

Family Life, an Illinois religious not-for-profit corporation, owns a building located at 270 East Chicago Street in Elgin, Illinois. (Am. Compl. 4)  For the past eight years, it has met at this location for religious worship, training, and fellowship.  (*Id.*)  In 2004, Family Life agreed to house a homeless ministry operated by HELPS, a separate Illinois religious not-for-profit corporation.  (*Id.* at  8)  Family Life and HELPS are not the only entities that operate homeless shelters in Elgin.  An operation called Public Action to Deliver Shelter (PADS) also provides homeless shelter, but only does so during the winter months and, pursuant to an agreement with Elgin, only provides shelter for those individuals who can establish a "connection to the City of Elgin." (*Id.* at 10)  Family Life has operated and wishes to continue to operate without either restriction.  (*Id.*)

After a November 2005 inspection, Family Life was informed that "the HELPS ministry was meeting in [its] building without zoning permission." (*Id.* at  11)  In response to this information, Angelo Valdes, HELPS's president, met with the Elgin City Manager in May 2006.  During this meeting, Valdes was made aware that Family Life could not continue to house the HELPS homeless ministry without a "Conditional Use Permit."[1]  (*Id.*)

---

[1] The city of Elgin is divided into twenty-nine zoning districts. (ELGIN, ILL., CODE § 19.07.300 (2006))  Within each district, four types of allowable land uses can exist: nonconforming, permitted, conditional, and similar uses.  (*Id.* at § 19.10.300)  If a type of land use is classified as conditional within a particular district, a party interested in such a use must obtain a CUP.  (*See id.* at ch. 19.65)  Elgin has used the conditional use classification for land uses "with unique characteristics and unusual impacts on surrounding property, which cannot be properly classified in any particular zoning district without individual review and consideration."  (*Id.* at § 19.65.010)  Here, the zoning district in which Family Life's property is located, Elgin's CC2 "City Center" area, does not classify a homeless shelter as a permitted use.  (*See* Defendant's Statement of Additional Facts, A, B)  It does, however, list conditional uses that would permit the HELPS homeless ministry to continue operating on Family Life's property if a

On September 5, 2006, HELPS took the first step in obtaining a CUP by filing an Annexation, Zoning, and Subdivision Development Application.[2] (*Id.* at 14; see also Ex. A to Am. Compl.) In its application, HELPS asked Elgin to allow its "ministry services/haven house" as a conditional use of Family Life's property. (Am. Compl. at 14) This initial submission was not processed because HELPS failed to pay the required fee. (*Id.*) On September 15, 2006, HELPS re-filed its application and paid the mandatory fee. (*Id.*; see also Ex. B to Am. Compl.)

On September 22, 2006, Elgin conducted a "pre-occupancy" inspection to determine whether the Family Life property could safely function as a shelter. (Ex. D to Am. Compl.) On September 26, 2006, the inspectors issued a memorandum noting 105 violations of Elgin's Life Safety Code. (*Id.*) These findings, in addition to the fear of being fined for continuing to house the shelter without a CUP, led Family Life to shut down HELPS' homeless ministry. (Am. Compl. at 16) HELPS' homeless ministry ceased operations at Family Life's property on October 20, 2006. (*Id.*)

On November 1, 2006, the Elgin Zoning Board approved the CUP application for the homeless ministry at Family Life. (*Id.* at 20) The final step in the CUP application process, review and approval by the City Council, was scheduled to take place on November 29, 2006. (*Id.*) The

---

CUP is obtained. (*Id.*)

[2] A party seeking a CUP must first submit an application to the Development Administrator at the City's Planning Department. (ELGIN, ILL., CODE § 19.65.060 (2006)) The Development Administrator will review the application, publish notice of the public hearing date, and forward the application along with the Planning Department's written findings and recommendations to the Zoning Board. (*Id.*) The Zoning Board will then hold a public hearing where the proposed use is evaluated. (*Id.*) The Development Administrator will then forward the application, the Planning Department's written findings and recommendations, along with the Zoning Board's written findings and recommendations, to the City Council for final approval. (*Id.*) If the City Council approves of the proposed use, it will pass an ordinance granting a conditional use. (*Id.*)

City Council, however, did not review and approve the application at the November 29, 2006 meeting. (*Id.*) Family Life alleges review by the City Council did not take place in November because, according to City Officials, the CUP application for the homeless ministry at its property had been "pulled from the City Council docket and sent to Elgin's legal department 'indefinitely.'" (*Id.*)

The uncertainty surrounding the CUP application led Family Life, HELPS, and Frank Cherrye, a homeless person who was staying at the homeless ministry in the fall of 2006, to file a lawsuit against Elgin on January 11, 2007. (*Id.* at 23) On May 9, 2007, the City Council passed Ordinance No. G28-07, approving HELPS' CUP application. (*Id.* at 25) The approval of the CUP was conditioned upon, among other things, the correction of the code violations noted in the September 26, 2006 memorandum and "compliance with all other codes, ordinances, and other applicable requirements of law." (Ex. F to Am. Compl.)

In early May 2007, HELPS was granted its motion to voluntarily withdraw as a plaintiff in the lawsuit against Elgin. (Def. Response in Opposition to Plaintiff's Motion for Summary Judgment, pg. 2) As a result, Family Life and Frank Cherrye filed an twelve-count amended complaint on June 15, 2007. (*Id.*)

The twelve counts, with the corresponding relief requested, are as follows:

- **Count I**: Violation of the First Amendment's Free Exercise of Religion Clause. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count II**: Violation of the First Amendment's Free Speech Clause. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count III**: Violation of the Equal Protection Clause of the Fourteenth Amendment. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count IV**: Unequal Treatment under RLUIPA. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- Count V: Substantial Burden under RLUIPA. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count VI**: Unreasonable Limitation under RLUIPA. Relief requested: (a) all damages to which plaintiffs are entitled; (b) temporary, preliminary, and permanent injunction prohibiting Elgin from using its zoning code - specifically the "temporary overnight shelter" provision - to prevent plaintiffs from or punish plaintiffs for using Family Life's property as a ministry for the homeless; (c) a declaration that Elgin's limitations on "temporary overnight shelters" as applied to Family Life are void and illegal under the RLUIPA; (d) attorneys' fees, expenses, and costs; and (e) other just relief.

- **Count VII**: Compliance with the EZO. Relief requested: (a) all damages to which plaintiffs are entitled; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count VIII**: Accessory Use under the EZO. Relief requested: (a) all damages to which plaintiffs are entitled; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count IX**: Claim under the IRFRA. Relief requested: (a) all damages to which plaintiffs are entitled; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

- **Count X**: Frank Cherrye's Equal Protection claim. Relief requested: (a) damages for economic losses and lost enjoyment of constitutional rights; (b) temporary, preliminary, and permanent injunctions preventing Elgin from imposing a "connection to the City of Elgin" requirement on homeless citizens through its agreement with PADS; (c) a declaration that the "connection to the City of Elgin" requirement is void and illegal, as it violates both the Equal Protection Clause of the Fourteenth Amendment and the Civil Rights Act of 1964; (d) attorneys' fees, expenses, and costs; and (e) other just relief.

- **Count XI**: Cherrye's Intentional and Negligent Infliction of Emotional Distress. Relief Requested: (a) all damages to which Cherrye is entitled; and (b) other just relief.

- **Count XII**: Violation of the Open Meetings Act. Relief requested: (a) all damages to which plaintiffs are entitled; (b) attorneys' fees, expenses, and costs; and (c) other just relief.

## II. ANALYSIS

   *a.   Standard of Review*

Elgin appears to argue for dismissal under grounds that either we lack subject matter jurisdiction over plaintiffs' federal and state claims or, alternatively, that plaintiffs fail to state claims for relief. We treat Elgin's standing, ripeness, and mootness arguments as arising under Fed. R. Civ. P. 12(b)(1). *See, e.g., Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 929 (7th Cir. 2007) (lack of standing raised under 12(b)(1)); *Verizon California Inc. v. Peevey*, 413 F.3d 1069, 1084 (9th Cir. 2005) ("The question of ripeness, like other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Rule 12(b)(1)") (citing Moore's Federal Practice § 101.73[1] (2005)); *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 89 (2d Cir. 2007) (mootness challenges analyzed under Fed. R. Civ. P. 12(b)(1)).

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide," and must be conferred upon the federal courts. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the complaint to other evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *See Kontos v. U.S. Dept.*

*of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

If necessary, we will treat Elgin's arguments that defendants have failed to state claims as Rule 12(b)(6) arguments. The purpose of a motion to dismiss - under either Rule 12(b)(1) or 12(b)(6) - is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Unless the claims are of the type specifically addressed by Fed. R. Civ. P. 9(b), a complaint "need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

To establish Article III standing, three elements must be present. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is concrete and particularized, and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560. Additionally, the injury caused must be "fairly…trace[able] to the challenged action of the defendant." *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41 (1976)). Finally, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561. As the party invoking federal jurisdiction, Family Life bears the burden of establishing these elements. *Id.* at 561.

    b.    *Federal Claims*

        1.    *Claims for Damages*

As shown in the above recitation of the twelve counts of the Amended Complaint, Family Life largely seeks damages for alleged conduct that has already occurred. The allegations in the Amended Complaint, at the most general level, fall into two buckets: delay allegations and prospective harm allegations. Within the "delay" bucket are alleged harms suffered after Elgin's

September 22, 2006 "pre-occupancy" inspection revealed 105 violations of Elgin's Life Safety Code. (Am. Compl. at p. 6, 16) Due to uncertainty as to whether Family Life would be able to continue to house the HELPS ministry, plaintiffs contend, Family Life shut down the ministry on October 20, 2006. (*Id.*)

Against this backdrop Elgin - through either its City Council or other city officials - allegedly deprived plaintiffs of their rights under federal and state law through the post-November 1, 2006 voting delay on approval of the CUP application. (*Id.* at pg. 9, 23) For example, paragraph 36 of the Amended Complaint states:

> Family Life's inability to use its property as a ministry to the homeless from November 29, 2006 to May 9, 2007 substantially burdened its religious exercise by making the difficult or impossible the following ministries during that time, which are essential religious beliefs and exercises of Family Life and its members [list followed].

Paragraph 37 makes much the same argument, tailored to different alleged violations:

> The City's prevention of Family Life continuing its homeless ministry at 270 E. Chicago St. from November 29, 2006 to May 9, 2007, through its arbitrary decision to remove the CUP application from the City Council docket, violates on its face and as applied to the Plaintiffs, the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution, RLUIPA and IRFRA.

To the extent plaintiffs seek damages for past harms they allegedly suffered, we find they have standing to advance those claims. Plaintiffs have stated an actual, past injury-in-fact that can be redressed by the relief they seek. *Lujan*, 504 U.S. at 560; *see also City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (although plaintiff may not have standing to bring injunctive action for past harms, plaintiffs do have standing to redress past violations of constitutional rights). Further, because Elgin does not direct its failure to state a claim arguments at these damages claims, we find

no basis to dismiss these claims pursuant to either Rule 12(b)(1) or 12(b)(6).[3]

### 2. Count VI: Violation of the RLUIPA

One of Family Life's counts of the Amended Complaint, however, does request that we enter judgments to prevent future harms. In Count VI, plaintiffs allege that Elgin will impose an unreasonable limitation on Family Life's operations in violation of the RLUIPA. Plaintiffs request that we enter a "temporary, preliminary, and permanent injunction" prohibiting Elgin from using its zoning code - specifically the "temporary overnight shelter" provision - to prevent plaintiffs from or punish plaintiffs for using Family Life's property as a ministry for the homeless. (Am. Compl. at p. 22) Further, plaintiffs seek a declaration that Elgin's limitations on "temporary overnight shelters" as applied to Family Life are void and illegal under the RLUIPA. (*Id.* at p. 22) However, the restrictions on temporary overnight shelters no longer apply to Family Life now that it has been granted the CUP. In fact, the CUP contains no temporal operation restrictions at all. (See Ex. F to Am. Compl.) Accordingly, the seasonal limitation plaintiffs claim would violate Family Life's rights under RLUIPA are no longer applicable, and Family Life is no longer facing an imminent threat of harm. Therefore, Family Life lacks standing to pursue prospective relief under Count VI.

Elgin also argues that the RLUIPA contains a "corrective action" provision that also obviates plaintiffs' ability to recover damages. A subsection to the RLUIPA, § 2000cc-3(e), states, "a government may avoid the preemptive force of any provision of [the RLUIPA] by changing the policy or practice that results in a substantial burden on religious exercise." The Seventh Circuit has

---

[3] Elgin also contends that only HELPS has standing to challenge the delay in granting the CUP because HELPS, not Family Life, was the entity that applied for the CUP in the first place. We reject this ground for dismissal, as we cannot conclude that Family Life has no "beneficial interest in the subject matter and relief sought" here. *Solomon v. Evanston*, 331 N.E.2d 380, 385 (Ill. App. Ct. 1975).

interpreted this provision as "afford[ing] a government the discretion to take corrective action to eliminate a nondiscrimination provision violation, whether or not it was the result of a substantial burden on religious exercise." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003). In *Civil Liberties*, the court found that when the City of Chicago amended its zoning ordinance such that the challenged ordinance indisputably complied with RLUIPA, the statute became "inapplicable to this case," and the plaintiffs/appellants could no longer advance any RLUIPA claims. *Id.* Here, as explained above, once Elgin granted the CUP, any RLUIPA issues dissolved. However, we do not read the RLUIPA or *Civil Liberties* to stand for the proposition that the corrective action can retroactively erase injuries already incurred as well as the corresponding ability to sue for damages. Accordingly, plaintiffs' claim for alleged damages already incurred under RLUIPA survives this motion to dismiss.

### 3. Cherrye's Count X

In Count X, Cherrye alleges that Elgin's "connection to the City of Elgin" requirement violates his right to travel. (Compl. 99-104.) Cherrye asserts that the three-day limit imposed on those who cannot prove a connection to the City of Elgin serves as a ban on the travel and migration of homeless citizens to Elgin. (*Id.* at 102.) Because we must examine extrinsic evidence to resolve this claim, we decline to dismiss Count X at the 12(b) stage.

## c. State Claims

### 1. Counts VII, VIII, and IX

Elgin contends that we should dismiss Counts VII, VIII, and IX for two reasons: first, Elgin claims plaintiffs have failed to exhaust administrative remedies, and that they are therefore ineligible to bring suit at this time. Second, Elgin argues that it is immune under the Illinois Tort Immunity

Act, 745 ILCS 10/2-104. We reject these grounds for dismissal.

First, Elgin argues that plaintiffs were required, and failed, to first exhaust their administrative remedies before filing suit. The entirety of Elgin's argument is as follows: "Illinois has 'exhaustion of remedies' and 'ripeness' requirements, which prohibit a landowner from seeking judicial relief unless and until it has exhausted all of its available administrative and legislative zoning alternatives." (Mem. in Supp. of Mot. to Dismiss, at 12-13) (citing *Northwestern University v. City of Evanston*, 383 N.E.2d 964, 967-69). "Generally, a party aggrieved by an administrative action must first pursue all available administrative remedies before resorting to the courts." *Village of South Elgin v. Waste Management of Illinois, Inc.*, 810 N.E.2d 658, 665 (Ill.App. 2d Dist.,2004) (citations omitted). However, in order for us to compel plaintiffs to exhaust their administrative remedies – or before we punish them for failing to do so – we would first need to know what remedies were available to them. Elgin has not identified any alternative processes or avenues for relief plaintiffs might have pursued. Further, it is not clear that the action plaintiffs challenge triggers the general Illinois exhaustion policy in the first place. To the extent plaintiffs are challenging the delay in receiving their CUP, they are not challenging a final action, but a delay in taking that – ultimately favorable – action. Accordingly, we reject this argument for dismissal.

Second, Elgin contends the Illinois Tort Immunity Act, 745 ILCS 10/2-104, "renders the City immune from damage claims arising out of the failure to issue zoning and building permits, no matter the reason for the refusal to issue the permit." (Mem. in Supp. of Mot. to Dismiss, at 13) (citing *Village of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1098-1101 (Ill.2001); *O'Malley v. Village of Palos Park*, 805 N.E.2d 308, 317-21 (Ill. App. Ct. 2004)). The Tort Immunity Act provides:

> A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

745 ILCS 10/2-104. Here, Family Life is not claiming they have been harmed by the "denial, suspension, or revocation" of a permit, but rather that they have been injured as a result of having to go through the process in the first place. They were not seeking a "permit, license, certificate or approval" because they were allegedly already in compliance with the Code. Neither O'Malley nor Village of Bloomingdale addresses such a fact pattern, as they involved situations where a "permit, license, certificate or approval" was denied. Given this, and in consideration of the fact that the Tort Immunity Act "was enacted in derogation of the common law" and must therefore be "strictly construed" against the public entity, we find it inapplicable here. *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 279 (2003).

On the other hand, we do dismiss Family Life's Count IX, for violation of the Illinois Religious Freedom Restoration Act, to the extent that count requests prospective injunctive relief. As explained above, Family Life has no standing to advance this claim. Because it has been granted a CUP, Family Life is not subject to the temporary shelter rules it challenges in this count, but only the terms and conditions of the CUP. Even though the CUP is conditioned upon "compliance with all other codes, ordinances, and other applicable requirements of law" (Exhibit F to Am. Compl.), this stipulation does not subject the operation of Family Life's proposed emergency shelter to a separate, independent chapter governing "temporary emergency shelters." As such, the seasonal limitation plaintiff claims would violate its rights under the IRFRA simply does not exist. Because it has not suffered harm, nor is facing an imminent threat of harm, resulting from the application of

the temporary shelter provision, Family Life fails to satisfy the first element required to establish standing.

                *2.*      *Count XII*

In Count XII, plaintiffs allege that Elgin's city officials "arbitrarily remov[ed] the CUP application for the homeless ministry," and that in so doing, Elgin violated the Illinois Open Meetings Act, 5 ILCS 120/1, et seq. Elgin moves to dismiss this claim on several grounds; we need only address Elgin's argument that the claim is time-barred. Plaintiffs challenge the removal of the CUP application from the Elgin City Council's docket, an action which took place no later than the November 29, 2006 scheduled meeting date.[4] Assuming this action falls within the Open Meetings Act in the first place, plaintiffs were required to file an Open Meetings Act challenge within sixty days of that decision (by the end of January 2007). See 5 ILCS 120/3.[5] Plaintiffs first raised their Open Meetings Act challenge in the Amended Complaint filed June 15, 2006. Accordingly, Count XII is time-barred.

## III. CONCLUSION

For the reasons stated above, we grant in part and deny in part Elgin's Motion to Dismiss. We grant the motion with respect to Count XII, as well as Counts VI and IX to the extent those

---

    [4] In their opposition to the motion to dismiss, plaintiffs attempt to re-characterize their Open Meetings Act challenge as one to the City Council's "holding" of the CUP application until May 2007. (Opp. Br. at 14) However, that is essentially a challenge to a failure to reach a decision: the only possible "decisions" that could be attributed to Elgin at all were the decisions to remove the application in the first place, then the May 9, 2007 decision to ultimately approve the application. We are not willing to describe every day of silence in-between those events as a separate Open Meetings Act violation.

    [5] Further, plaintiffs cannot very well challenge any subsequent actions of the City Council, as the product of the alleged "closed" meeting was to *grant* the CUP application.

counts seek injunctive, prospective relief. We deny the remainder of the motion.

It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: September 24, 2007